UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE L. TOLLEY, | ) Case No. 1:16CV2083 |
| Plaintiff, | ) |
| | ) JUDGE JOHN R. ADAMS |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) <u>REPORT AND RECOMMENDATION</u> |

Plaintiff Christine L. Tolley ("Tolley" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying her applications for Disability Insurance Benefits ("DIB"), a Period of Disability, and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be affirmed.

I.  PROCEDURAL HISTORY

On March 11, 2014, Tolley applied for DIB and SSI benefits. (R. 11, PageID #: 220-223, 224-228, 266-272.) Tolley stated that she became unable to work because of her disabling

1

condition on June 30, 2013. (*Id.* at 267, 220.) Her applications were denied initially and upon reconsideration. (R. 11, PageID #: 132-155, 156-179.) Thereafter, she filed a written request for a hearing before an administrative law judge ("ALJ"). (*Id.* at 212-213.) The ALJ convened a video hearing on April 9, 2015, to hear Tolley's case. (*Id.* at 99-131.) Tolley appeared at the hearing, was represented by counsel, and testified. (*Id.* at 101-102.) A vocational expert ("VE") attended the hearing and provided testimony. (*Id.* at 102, 116-130.)

On May 29, 2015, the ALJ issued her decision, applying the standard five-step sequential analysis to determine whether Tolley was disabled. (*Id.* at 83-94; *see generally* 20 C.F.R. §§ 404.1520(a), 416.920(a).) Based on her review, the ALJ concluded Tolley was not disabled. (*Id.* at 83, 94.) The Appeals Council denied Tolley's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 11, PageID #: 61-63.) Tolley's present action seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case.

## II. PERSONAL BACKGROUND INFORMATION

Tolley was born on December 30, 1968, and was 44 years old as of her alleged disability onset date. (R. 11, PageID #: 220, 92.) Accordingly, Tolley was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. § 404.1563(c). She completed tenth grade, and is able to communicate in English. (R. 11, PageID #: 268, 266, 93.) Tolley had past relevant work as home health aide, and a general clerk. (*Id.* at 119, 92.)

2

III. RELEVANT MEDICAL EVIDENCE

A. Treatment Records

Disputed issues will be discussed as they arise in Tolley's brief alleging errors by the ALJ. A short summary of relevant medical history follows here. As noted earlier, Tolley applied for DIB and SSI benefits on March 11, 2014. (R. 11, PageID #: 220-223, 224-228, 266-272.) Tolley identified "degenerative spinal disease" as the condition that limits her ability to work. (*Id.* at 267.)

Tolley had a history of chronic back pain, specifically "Grade I-II spondylolisthesis L5-S1 with foraminal stenosis and nerve root compression," which had been resistant to conservative treatment, leading to surgery, an anterior lumbar interbody fusion, performed by Mario Sertich, M.D., on May 27, 2009. (*Id.* at 520-521.)

Tolley began treatment with Heather Scullin, D.O., on March 11, 2011. (R. 11, PageID #: 538.) On November 29, 2011, Tolley reported chronic pain in the lumbar spine, which did not radiate. (*Id.* at 363.) Tolley stated the pain was moderate, but requested another epidural injection (she had previously received an injection in March 2011). Tolley also reported a shingles outbreak. *Id.* Dr. Scullin noted a decreased range of motion in the lumbar back, with tenderness and pain. *Id.* at 364. The doctor's assessment was low back pain, radiating to left leg, radicular pain, and sciatica. She gave Tolley lidocaine, Norco, Neurontin, and several other medications. *Id.* at 366-367. Dr. Scullin determined that she would benefit from a series of three caudal epidural steroid injections. *Id.* at 368.

An April 25, 2012, X-ray ordered by Dr. Scullin revealed Grade I L5-S1 spondylolisthesis, with intervertebral surgical cages present. The remainder of the lumbar spine

3

was unremarkable. (*Id.* at 355.) A CT scan on September 7, 2012, showed Grade 2 L5-S1 spondylolisthesis, but no spinal canal stenosis. *Id.* at 347.

Tolley continued treatment with Dr. Scullin through 2012 into 2014, for back pain, tenderness and decreased range of motion. Dr. Scullin administered the series of three caudal epidural steroid injections several additional times, and continued Tolley on a course of medication. *See generally* R. 12, PageID #: 579-582 (citing medical record).

At a June 19, 2013, visit with Dr. Scullin, Tolley reported that she was miserable, and that her back pain was worse, with pain shooting down into her left leg. She was taking the Norco, but was unable to function on Percocet. Tolley said, "she feels she is unable to work in pain all the time." (R. 11, PageID #: 421-422.) Dr. Scullin noted that Tolley's back pain was a chronic, daily problem, which had been gradually worsening since its onset. Associated symptoms include leg pain, numbness and weakness. She had tried analgesics, heat and ice, injections and caudal blocks, and TENS unit, but the treatment provided no relief. *Id.* at 422.

Tolley reported to Dr. Scullin that she wanted to work, but simply cannot any longer. (R. 11, PageID #: 427.) Dr. Scullin's assessment was that Tolley "is no longer able to work as of 6/20/13 due to impaired ability to bend and lift– inability to tolerate sitting for longer than 20 minutes, and severe pain." *Id.*

### B. Medical Opinions Concerning Claimant's Functional Limitations

Dr. Scullin completed a "Physician's Statement of Disability" on October 21, 2013. (R. 11, PageID #: 538-539.) Dr. Scullin stated that Tolley was no longer able to work, as of June 19, 2013, due to chronic back pain. *Id.* Tolley would be able to lift, carry, push or pull a maximum of

4

ten pounds. Dr. Scullin checked off that Tolley would be able to walk, sit or stand for 0 hours in an 8-hour workday. *Id.*

Dr. Scullin subsequently completed a "Physical Ability Assessment" on December 10, 2013. (R. 11, PageID #: 540-541.) On this form, Dr. Scullin indicated that Tolley was occasionally (0-2.5 hours per day) able to sit, stand, walk, or reach. *Id.* at 540. She was able to lift or carry up to ten pounds. *Id.* at 541. Dr. Scullin stated that Tolley was "not employable." *Id.* Dr. Scullin indicated that her most recent physical exam of Tolley was September 27, 2013, for both of these opinions. (R. 11, PageID #: 538, 541.)

On May 21, 2014, William Bolz, M.D., a state agency medical consultant, found that Tolley could occasionally lift or carry up to 20 pounds, or frequently up to ten pounds. She could stand, walk, or sit for about six hours of an eight-hour workday. (R. 11, PageID #: 139.) Due to back pain, Tolley could never climb ladders, ropes or scaffolds, but could occasionally climb stairs or ramps, balance, stoop, kneel, crouch or crawl. *Id.* at 140. On reconsideration on November 8, 2014, Leon D. Hughes, M.D., found the same limitations. (R. 11, PageID #: 163-164.)

IV. TESTIMONY OF VOCATIONAL EXPERT

At the hearing, the vocational expert provided testimony. (R. 11, PageID #: 102, 116-130.) The VE first determined that Tolley had past relevant work as a home health aide, DOT number 354.377-014, which is medium level of exertion, lower level semi-skilled, SVP of 3. (R. 11, PageID #: 119.) Her past work as a hospital admitting clerk was classified as a general clerk, DOT number 209.562-010, light level of exertion, lower level semi-skilled, SVP of 3. *Id.* In

5

neither job would she have acquired any skills that would be transferable. *Id.*

The ALJ posed a hypothetical question concerning:

> . . . an individual of Tolley's age, education, and past work experience, who can do a range of sedentary work with an ability to alternate positions about every hour as needed, but remain at the workstation or on task; occasional climbing of ramps and stairs, balancing, stooping, and kneeling; no climbing of ropes, ladders, or scaffolds; no crouching or crawling; occasional vibration.

(R. 11, PageID #: 119.) The ALJ asked whether, with those limitations, the individual could do either of the past jobs, to which the VE agreed she could not. *Id.* at 119-120.

The ALJ then asked whether there would be other work that the hypothetical person could perform. (R. 11, PageID #: 120.) The VE responded that such a person could perform a number of sedentary, unskilled assembly and packaging jobs:

> For example, final assembler, DOT number 713.687-018, 1,800 people employed in Northeast Ohio, over 6,000 in the state of Ohio, over 100,000 nationally. The Dictionary classifies that work as sedentary, unskilled, with an SVP of 2. Another job for [*sic*] such a hypothetical individual could perform would be that of a lens ... inserter, DOT number 713.687-026, over 1,100 people employed in Northeast Ohio, over 6,000 in the state of Ohio, over 100,000 nationally. The Dictionary classifies the work as sedentary, unskilled, with an SVP of 2. Another job would be that of a touchup screener, printed circuit boards, DOT number 726.684-110, over 2,500 people employed in Northeast Ohio, over 8,000 in the state of Ohio, over 200,000 nationally. The Dictionary classifies the work as sedentary, unskilled, with an SVP of 2.

(R. 11, PageID #: 120.)

The ALJ then modified the hypothetical, asking the VE to assume an individual who could do the same range of work as the first, but would need to take frequent, unscheduled breaks, or might miss more than two days per month because of symptoms related to her impairments. The VE stated that such an individual would not be able to maintain full-time employment. (R. 11, PageID #: 121.)

6

The claimant's attorney asked the VE, if only occasional reaching was added as a limitation, would that affect his response. The VE said that a worker with such an additional limitation would not be able to do the jobs identified, as they required some amount of frequent reaching. (R. 11, PageID #: 121-122.)

## V. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her May 29, 2015, decision:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since June 30, 2013, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease, status post lumbar fusion, spondylosis and sciatica (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant would need the ability to alternate positions every hour as needed but remain at the work station and on task. The claimant could occasionally climb ramps and stairs, balance, stoop, and kneel. The claimant could never climb ladders, ropes or scaffolds, crouch or crawl. The claimant could have occasional exposure to vibration.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7

7. The claimant was born on December 30, 1968, and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 11, PageID #: 85, 88, 92-94.)

## VI. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. §§ 404.1505(a), 416.905(a)

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston*

8

*v. Comm'r Soc. Sec. Admin.*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Comm'r Soc. Sec. Admin.*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

## VII. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Comm'r Soc. Sec. Admin.*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971)*.* "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits

9

determination, that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VIII. ANALYSIS

Tolley's brief presents the following two issues for review:

1. The decision erred in its assessment of treating physician's opinions where it failed to apply Social Security's treating-physician rule, and where the decision's residual functional capacity finding is a construct by the administrative law judge, based on no medical opinion in the record and relying on the administrative law judge's own judgment on a medical issue.

2. The decision's credibility assessment is in error, where it does not contain specific reasons for finding the claimant not fully credible, is not supported by evidence in the record, and is beyond meaningful review.

(R. 12, PageID #: 573.)

10

A. Treating Physician Rule

Tolley argues that the ALJ failed to give appropriate weight to the opinion of her treating physician, Heather Scullin, D.O. (R. 12, PageID #: 584-591.) The ALJ discussed Dr. Scullin's findings and observations at several points in the decision, however. When addressing opinion evidence, specifically two disability statements dated October 21, 2013, and December 10, 2013, the ALJ stated:

> The undersigned gives little weight to Dr. Scullin's opinions for the following reasons. First, her opinions are inconsistent with each other, even though they were made just two months apart. Second her opinions are unsupported by her own findings and observations both prior and subsequent to the opinions, such as normal strength, sensation, coordination and gait without evidence of distress; and there are no objective diagnostic tests to support her opinion or extent of limitations. Third, an opinion regarding an individual's ability to work is one reserved for the Commissioner.

(R. 11, PageID #: 91-92, internal citations omitted.)

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians. *Gayheart v. Comm'r Soc. Sec. Admin.*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. The "treating physician rule" is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 404.1527(c)(2). The treating physician rule requires opinions from treating physicians to be given controlling weight where the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. In other words, treating physicians' opinions

11

are only given deference when supported by objective medical evidence. *Vance v. Comm'r Soc. Sec. Admin.*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Comm'r Soc. Sec. Admin.*, 336 F.3d 469, 477 (6th Cir. 2003)).

Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c). Although the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in his decision. *Francis v. Comm'r Soc. Sec. Admin.*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s). *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3. Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Winning v. Comm'r Soc. Sec. Admin.*, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p).

An ALJ must evaluate each medical opinion in the record. *Smith v. Comm'r Soc. Sec. Admin.*, 482 F.3d 873, 875 (6th Cir. 2007); 20 C.F.R. §§ 404.1527(c). Treating physicians' opinions are only given deference when the ALJ finds they are supported by objective medical evidence. *Vance*, 2008 WL 162942, at *3 (citing *Jones*, 336 F.3d at 477). The ALJ is not bound by a treating physician's opinions, and may reject the treating physician's findings where good

12

reasons to do so are found in the record. *Hare v. Comm'r Soc. Sec. Admin.*, No. 01-4228, 2002 WL 1354699, at *2 (6th Cir. June 19, 2002).

State agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must consider their evidence. 20 C.F.R. §§ 404.1513a(b)(1); 404.1527(e). Although the ALJ generally accords more weight to a treating source over those of a non-examining source, the ALJ is not prohibited from adopting the findings of a non-examining source. *See generally Ealy v. Comm'r Soc. Sec. Admin.*, 594 F.3d 504, 514-515 (6th Cir. 2010); *Smith*, 482 F.3d at 875.

Contrary to plaintiff's assertion, the ALJ's decision considered the relevant factors when assigning weight to Dr. Scullin's opinions. The ALJ considered the treatment relationship (specifically noting "treating physician Heather Scullin, D.O.," R. 11, PageID #: 86, 91), implicitly recognized the length, and the nature and extent, of the relationship (citing treatment records ("4F; 9F") from June 2013 through December 2014, R. 11, PageID #: 86), and addressed the "supportability" of the evidence regarding her opinions (R. 11, PageID #: 89-92). *See generally* 20 C.F.R. § 404.1527(c). The ALJ thus considered the proper factors in determining how much weight to give to Dr. Scullin's opinions. *Francis*, 2011 WL 915719, at *3; *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c).

Tolley protests that the ALJ erred when determining that Dr. Scullin's two opinions were inconsistent with each other. Tolley directs the court's attention to the "sitting" limitation in Dr. Scullin's October 2013 statement, which indicated that Tolley could sit or stand for "0 hours" of an eight-hour workday. (R. 12, PageID #: 588; R. 11, PageID #: 539.) Dr. Scullin's December 2013 assessment indicated that Tolley could sit or stand "occasionally" during the workday, and that designation contained a corresponding hourly value of "0-2.5 hrs/day" and "0-1/3 of the

13

Day." *Id.* at 540. Tolley notes that the two opinions were not inconsistent because the forms provided different options to mark. (R. 12, PageID #: 588.) The December 2013 assessment was a check-box form that contained no explanation, however. ALJs may give little weight to "check-off forms" that do not cite clinical test results, observations, or other objective findings *See generally Ellars v. Comm'r Soc. Sec. Admin.*, No. 15-4039, 2016 WL 2610234, at *2 (6th Cir. May 6, 2016) (citing cases). In the space provided on the December form for elaboration on any of the categories, Dr. Scullin simply wrote, "not employable" and did not offer any supporting observations or indication that Tolley was unable to sit or stand at all. (R. 11, PageID #: 540.) There was no intervening physical exam between the two opinions. *Id.* at 538, 541 (most recent physical exam was September 27, 2013, for both opinions).

In addition, the ALJ identified other inconsistencies stating, "[a]dditionally, despite her previous opinion just two months earlier that the claimant could never perform postural maneuvers," Dr. Scullin's December form "reported that balancing, stooping, kneeling, crouching, and crawling do not apply to the diagnosis, even though the diagnoses are related to lumbar impairments. Dr. Scullin indicated the claimant could occasionally sit, stand, walk, reach, lift 10 pounds and climb stairs, but she still opined the claimant is unemployable." (R. 11, PageID # 91). Tolley does not challenge these conclusions. The ALJ did not err in determining that the two opinions are internally inconsistent, but that does not end the analysis.

The ALJ further supported her determination to afford little weight to Dr. Scullin's opinions. The ALJ determined the opinions were "unsupported by [Dr. Scullin's] own findings and observations both prior and subsequent to the opinions" and cited to Dr. Scullin's notes from a May 28, 2013, visit, wherein the doctor found "normal strength" and "normal muscle tone,"

14

while also acknowledging tenderness and decreased ROM in the lumbar back. (R. 11, PageID #: 90, citing PageID #: 418-419; *see also* PageID #: 427 (June 19, 2013: "normal strength" and "normal muscle tone,"); 434 (July 30, 2013 (same)); 442 (September 27, 2013 (same)); 452 (December 23, 2013 (same).)

Tolley also argues that the ALJ did not discuss objective diagnostic tests which would support a sitting limitation of twenty minutes at a time. (R. 12, PageID #: 589.) While the ALJ must consider all the evidence in the record, there is no requirement that the ALJ discuss every single piece of evidence. *See, e.g.*, *Atkinson v. Astrue*, No. 09-1369, 2010 WL 2977593, at *3 (10th Cir. July 29, 2010); *Thacker v. Comm'r Soc. Sec. Admin.*, No. 02-6138, 2004 WL 1153680, at *3 (6th Cir. May 21, 2004). The decision recognizes Tolley's history of degenerative disk disease with spondylolisthesis at L5-S1 and central canal stenosis (R. 11, PageID #: 89), which the diagnostic tests had revealed.

In addition, as the ALJ stated (R. 11, PageID #: 92), Dr. Scullin's opinion that Tolley is not employable is a determination reserved to the Commissioner. *See* 20 C.F.R. §§ 416.927(d)(1), 404.1527(d)(1); *Vance*, 2008 WL 162942, at *3; *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (opinion that claimant is "disabled" is not a medical opinion).

The ALJ provided good reasons, supported by evidence in the case record, for the weight assigned to Dr. Scullin's opinion, and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407. The ALJ's determination is supported by substantial evidence, regardless of whether this court would resolve issues of fact in dispute differently, or substantial evidence could support an opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545.

15

### B. Residual Functional Capacity ("RFC")

"The ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw his own inferences." *Simpson v. Comm'r Soc. Sec. Admin.*, No. 08-3651, 2009 WL 2628355, at *12 (6th Cir. Aug. 27, 2009) (quoting *McCain v. Director, OWCP*, 58 Fed.Appx. 184, 193 (6th Cir. 2003)). The ALJ found that Tolley had the RFC to perform sedentary work, with the ability to change positions every hour as needed. (R. 11, PageID #: 88.) Tolley contends that the ALJ's RFC finding is a construct based on no medical opinion in the record and relies on the ALJ's own judgment on a medical issue.

Tolley argues that none of Dr. Scullin's opinions support the ability to perform sedentary work, requiring sitting of six of eight hours per workday. (R. 12, PageID #: 590.) She states that although the agency physicians' opinions concluded that Tolley could perform light exertion work, the ALJ disagreed with them. (R. 12, PageID #: 589-590, citing R. 11, PageID #: 91.) Here, the ALJ indeed found Tolley to be more limited than the agency physicians, but less limited than Dr. Scullin opined. The ALJ's RFC determination, however, was within the bounds of the opinion evidence, and was well-supported by a thorough consideration of the medical evidence in the record. *See generally* R. 11, PageID #: 88-92. Reviewing the parties' arguments and the evidence of record on this issue, the court finds the RFC is supported by substantial evidence.

### C. Credibility Determination

Tolley contends that the ALJ's credibility assessment is faulty, because it does not contain specific reasons for finding Tolley not fully credible, and is not supported by evidence in the record. (R. 12, PageID #: 573.)

16

The ALJ's findings based on the credibility of the claimant are accorded great weight and deference. *Walters*, 127 F.3d at 531; *Gonzalez v. Comm'r Soc. Sec. Admin.*, No. 1:06CV687, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008). The ALJ's credibility determinations must be "based on a consideration of the entire case record," and "must find support in the record." *Rogers v. Comm'r Soc. Sec. Admin.*, 486 F.3d 234, 247-248 (6th Cir. 2007). SSR 96–7p also requires the ALJ explain his credibility determinations such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248. The court finds that the ALJ's credibility determinations are reasonable, specific, and supported by substantial evidence.

The ALJ first outlined the kinds of evidence that she would consider, in addition to the objective medical evidence, in assessing the credibility of Tolley's statements. (R. 11, PageID #:89, summarizing SSR 96–7p factors.) The ALJ then reviewed Tolley's hearing testimony. *Id.*

The ALJ recognized the record confirmed Tolley's history of degenerative disk disease with spondylolisthesis at L5-S1 and central canal stenosis, and her surgery for same. The ALJ noted that, post-surgery, Tolley continued to receive treatment for back pain and sciatica. (R. 11, PageID #:89.) The ALJ reviewed Dr. Scullin's treatment notes, which showed that although Tolley had tenderness and decreased range of motion in her lumbar spine, the doctor also found Tolley in no distress and to have normal strength, sensation, coordination and gait, which the ALJ stated was inconsistent with debilitating pain symptoms. *Id.* at 89-90. Although Tolley argues that she did not specifically use the word "debilitating" to characterize her pain (R. 593), the Sixth Circuit has noted that allegations of pain "do not constitute a disability, unless the pain

17

is of such a debilitating degree that it prevents an individual from participating in substantial gainful employment." *Bradley v. Secretary, HHS*, 862 F.2d 1224, 1227 (6th Cir. 1988) (citing *Kirk*, 667 F.2d at 538); *see also Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Sizemore v. Secretary, HHS*, 865 F.2d 709, 713 (6th Cir. 1988) (subjective allegations of disabling pain are insufficient by themselves).

Tolley disputes the ALJ's assessment of the evidence. (R. 12, PageID #: 593-594.) However, this court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner*, 745 F.2d at 387. The ALJ identified specific facts supported by the record that cast doubt on the severity of the symptoms as described by Tolley. (R. 11, PageID #: 89-90.) Because "a reasonable mind might accept [the evidence] as adequate to support" the ALJ's credibility determination, the court concludes that substantial evidence supports the ALJ's finding. *Norris v. Comm'r Soc. Sec. Admin.*, No. 11-5424, 2012 WL 372986, at *5 (6th Cir. Feb. 7, 2012) (citing *Rogers*, 486 F.3d at 241).

The ALJ's determination is supported by substantial evidence, regardless of whether this court would resolve issues of fact in dispute differently, or substantial evidence could support an opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545.

IX. CONCLUSION

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence. The record evidence as discussed in the ALJ's decision is such that "a reasonable mind might accept [it] as adequate" support for the Commissioner's final benefits determination. *See Kirk*, 667 F.2d at 535 (quoting *Richardson*, 402 U.S. at 401).

Accordingly, the undersigned recommends that the decision of the Commissioner be **AFFIRMED**.

Date:  June 29, 2017                                  s/ *David A. Ruiz*
                                                      David A. Ruiz
                                                      United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).

19